## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WALTER R. DAVIS III and DIANA M. )
COKE-DAVIS,                       )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )
                                  )    C.A. No. 1:21-cv-01713-CFC
BAC HOME LOANS SERVICING,         )
L.P.; GREENTREE SERVICING LLC;    )
DITECH FINANCIAL LLC; and         )
NEWREZ c/o SHELLPOINT             )
MORTGAGE and 1 to 50, inclusive,  )
                                  )
          Defendants.             )

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR FINAL SUMMARY JUDGMENT

WILKS LAW, LLC

*/s/ Scott B. Czerwonka*
Scott B. Czerwonka (Bar. No. 4844)
Anna L. Fiscella (Bar No. 6796)
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Telephone: (302) 225-0850
Email: sczerwonka@wilks.law
Email: afiscella@wilks.law

*Attorneys for Defendant Newrez*
*c/o Shellpoint Mortgage*

## **TABLE OF CONTENTS**

I.      NATURE & STAGE OF THE PROCEEDINGS ...........................................1

II.     SUMMARY OF THE ARGUMENT ....................................................2

III.    STATEMENT OF FACTS ................................................4

IV.     ARGUMENT...................................................................7

    A.    Shellpoint Did Not Violate RESPA (Count I). ...................7

        i.    Shellpoint Did Not Receive Any Correspondence in November 2020.....................................7

        ii.    Plaintiffs' December 11, 2019 and August 12, 2020 Emails Do Not Qualify as QWRs or NOEs. ...............8

        iii.    Plaintiffs Fail to Assert Any Damages to State a Claim for RESPA....................................11

    B.    Plaintiffs' Remaining Counts Fail Because Plaintiffs' Paid Off the Loan. ...................................12

    C.    Plaintiffs' Count II FDCPA Claim Fails Because Shellpoint is Not a Debt Collector, Subject to the Fair Debt Collections Practices Act, and Plaintiffs' Claims Are Barred by the Statute of Limitations. ............................14

    D.    Plaintiffs' Count III FDCPA Claim Also Fails For Failure to State a Claim. ...................................16

    E.    Plaintiffs' Count IV FDCPA is Preempted by the FCRA and Shellpoint Did Mark Plaintiffs' Account as "In Dispute" During the Relevant Time Period.......................16

    F.    Plaintiffs' Count V was Dismissed. ....................18

G. Plaintiffs Cannot State a Claim for Negligent Servicing (Count VI). ..............................................................18

H. Shellpoint Is Not a Party to the Contract and Cannot be Subject to Liability for Breach of Implied Covenants of Good Faith and Fair Dealing (Count VII)...........................................19

I. Shellpoint Was Not Unjustly Enriched (Count VIII).........................20

J. Plaintiffs Cannot State a Claim for RICO (Counts IX and X)............21

CONCLUSION ...................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Bally v. Homeside Lending, Inc.*,
  2005 WL 2250856 (N.D. Ill. Sept. 8, 2005) ..........................................................9

*Bank of America, N.A. v. Westheimer*,
  2014 WL 809207 (D.N.J. Feb. 18, 2014) ...........................................................18

*Berneike v. CitiMortgage, Inc.*,
  708 F.3d 1141 (10th Cir. 2013) ...............................................................9

*Burrell v. DFS Servs, LLC*,
  753 F. Supp. 2d 438 (D.N.J. 2010)........................................................16

*Catalan v. RBC Mortg. Co.*,
  2008 WL 2741159 (N.D.Ill. July 8, 2008) ............................................9

*Childress v. CitiMortgage, Inc.*,
  2010 WL 9951758 (D.N.M. Feb. 19, 2010) ..........................................9

*Cippollone v. Ligget Grp. Inc.*,
  505 U.S. 504 (1992)...................................................................17

*Daddabbo v. Countrywide Home Loans, Inc.*,
  2010 WL 4262027 (W.D. Wash. Oct. 27, 2010)...................................9

*Douglass v. Covergent Outsourcing*,
  765 F.3d 299 (3d Cir. 2014) ...........................................................14

*Edwards v. Equable Ascent, FNCL, LLC*,
  No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112, 2012 WL 1340123
  (D.N.J. Apr. 16, 2012) ....................................................................16, 17

*Fallas v. Cavalry SPV I, LLC*,
  2013 U.S. Dist. LEXIS 60380 (D.N.J. Apr. 29, 2013)...........................17

*Home Ins. Co. v. Honaker*,
  480 A.2d 652 (Del. 1984) .....................................................................13

*Hydrogen Master Rights, Ltd. v. Weston*,
  228 F. Supp. 3d 320 (D. Del. 2017)...................................................20

i

*Lemieux v. Litton Loan Servicing, LP*,
   2009 WL 5206641 (E.D.Cal. Dec. 22, 2009) ......................................................9

*Malawi v. PHI Service Co.*,
   2012 WL 986751 (Del. Ct. Comm. Pl. Feb. 22, 2012) ...............................12, 13

*Matthews v. Kidder, Peabody, & Co.*,
   260 F.3d 239 (3d Cir. 2001) .........................................................................21, 22

*Nieves v. All Star Title, Inc.*,
   2010 WL 2977966 (Del. Super. 2010) ..............................................................13

*O'Neill v. AFS Holdings, LLC*,
   2014 WL 626031 (Del. Super. Ct. Jan. 15, 2014) .............................................19

*Pollice v. National Tax Funding, L.P.*,
   225 F.3d 379 (3d Cir. 2000) ..............................................................................15

*Quenroe v. Mortg. Elec. Registration Sys., Inc.*,
   2012 WL 425175 (D.Minn. Feb. 9, 2012).............................................................9

*Roth v. CitiMortgage Inc.*,
   2013 WL 5205775 (E.D.N.Y. Sept. 11, 2013) .....................................................9

*Roth v. CitiMortgage Inc.*,
   756 F.3d 178 (2d Cir. 2014) .................................................................................9

*Ruff v. America's Servicing Co.*,
   No. 07–0489, 2008 WL 1830182 (W.D. Pa. Apr. 23, 2008) ............................19

*Steele v. Green Tree Servicing, LLC*,
   2010 WL 3565415 (N.D.Tex. Sept. 7, 2010) *aff'd*
   *sub nom. Steele v. Green Tree Servicing, L.L.C.*,
   453 Fed. Appx. 473 (5th Cir. 2011).....................................................................9

*Total Care Physicians, P.A. v. O'Hara*,
   798 A.2d 1043 (Del. Super. Ct. 2001)................................................................20

*Trunzo v. Citi Mortg.*,
   876 F. Supp. 2d 521 (W.D. Pa. 2012).................................................................19

*W. Natural Gas. Co. v. Cities Serv. Gas Co.*,
   201 A.2d 164 (Del. 1964) ...................................................................................14

**Statutes**

12 U.S.C. § 2605 ................................................................................passim

15 U.S.C. §1681 ...............................................................................16, 17

15 U.S.C. § 1691 ....................................................................................14

15 U.S.C.§ 1692 ...................................................................................1,15

18 U.S.C. § 1962 ....................................................................................21

Fair Credit Reporting Act .................................................................3, 16, 17

Fair Debt Collections Practices Act ...........................................3, 14, 15, 16

Racketeer Influenced and Corrupt Organizations Act....................................1, 4, 21

Real Estate Settlement Procedures Act.................................................passim

**Other Authorities**

Rule 56 of the Federal Rules of Civil Procedure .......................................2

## I. NATURE & STAGE OF THE PROCEEDINGS

On August 18, 2021, Plaintiffs filed their Complaint in the Superior Court of the State of Delaware, Case No. 2021-0711, against Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, L.P. ("BANA"); Greentree Servicing, LLC ("Greentree"); Ditech Financial, LLC ("Ditech"); and Shellpoint and DOES 1 to 50 inclusive. Plaintiffs' Complaint alleges that Shellpoint: (1) violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA") (Count I); (2) violated the Fair Debt Collections Practices Act, § 15 U.S.C 1692 ("FDCPA") (Counts II-IV): (3) negligently serviced Plaintiffs' account (Count VI); (4) breached the implied covenant of good faith and fair dealing (Count VII); (5) was unjustly enriched (Count VIII); and (6) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts IX and X).[1]

On December 3, 2021, former Defendant BANA removed the action to this Court with Shellpoint's consent. (D.I. 1). On January 7, 2022, Shellpoint filed its Answer and Affirmative Defenses. (D.I. 7). On that same day, BANA filed its Motion to Dismiss. (D.I. 9-10). On January 25, 2022, Plaintiffs filed their Answering Brief. (D.I. 11). On February 1, 2022, BANA filed its Reply Brief. (D.I. 12). On

---

[1] Count V was solely against BANA and was dismissed by this Court on September 28, 2022. (D.I. 16-17).

September 28, 2022, this Court granted BANA's Motion to Dismiss and issued its Memorandum Opinion. (D.I. 16-17).

On September 22, 2022, Plaintiffs voluntarily dismissed Defendants Greentree and Ditech. (D.I. 15). This Court entered its Scheduling Order on September 30, 2022. (D.I. 18). On February 22, 2023, the parties filed a Joint Motion to Amend/Correct Scheduling Order. (D.I. 21). On that same date, this Court granted the Joint Motion ruling that dispositive motions are due by March 31, 2023. (D.I. 22).

During the pendency of this action, the parties have participated in informal discovery and attempted to resolve the case, but were unable reach a resolution. Therefore, Shellpoint moves for final summary judgment.

## II.     SUMMARY OF THE ARGUMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Newrez c/o Shellpoint Mortgage ("Shellpoint Mortgage" or "Shellpoint") moves for final summary judgment to dismiss all of Plaintiffs' counts asserted against Shellpoint Mortgage.

Plaintiffs' claim for violation of RESPA (Count I) fails because Shellpoint complied with all RESPA requirements. Shellpoint never received any correspondence from Plaintiffs in November 2020. The correspondence that Shellpoint did receive on December 11, 2019 and August 20, 2020 were via email

and not to Shellpoint's designated address. Therefore, Shellpoint was not required to respond. Nonetheless, Shellpoint did respond in compliance with RESPA. Finally, Plaintiffs fail to identify any damages to support a claim for RESPA.

Plaintiffs' Counts II-X fail because Plaintiffs paid off both their first and second mortgages without dispute. Therefore, they are not entitled to the return of any monies, pursuant to the voluntary payment rule.

Plaintiffs FDCPA claims (Counts II-IV) also fail because Shellpoint is not considered a debt collector under the FDCPA, and the claims are barred by the one-year statute of limitations. Plaintiffs failed to submit a "dispute" to Shellpoint to support their Count III FDCPA claim. Finally, Plaintiffs' Count IV FDCPA claim is preempted by the Fair Credit Reporting Act ("FCRA"). Further, Shellpoint did mark Plaintiffs' account as "in dispute" and only removed said reporting upon Plaintiffs' request.

Plaintiffs' negligent servicing claim (Count VI) fails because Plaintiffs fail to identify a duty of care that Shellpoint owed them. Additionally, Plaintiffs' claims fail to identify how Shellpoint improperly serviced their account.

Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Count VII) fails because Plaintiffs fail to identify a contractual obligation that they allege Shellpoint breached. Further, Plaintiffs cannot establish a contractual relationship because Shellpoint is not listed as a party to the first mortgage, second

3

mortgage, or loan modification. Moreover, Plaintiffs failed to plead sufficient facts to support their unjust enrichment claim (Count VIII), and any such claim is barred by the three-year statute of limitations. The undisputed facts fail to demonstrate that Shellpoint was unjustly enriched.

Finally, Plaintiffs' RICO claims (Counts IX and X) fail because they are barred by the four-year statute of limitations, and the undisputed facts fail to demonstrate that Shellpoint violated RICO.

## III.    STATEMENT OF FACTS

On June 13, 2001, Plaintiffs executed and delivered a promissory note ("Note") securing payment to America's Wholesale Lender. *See* Affidavit in Support of Motion for Final Summary Judgment ("Aff."), ¶ 3, Ex. 1; Plaintiff's Complaint, D.I. 1, Ex. A, at 12-142, ¶ 10.[2]

On June 13, 2001, Plaintiffs executed and delivered a mortgage ("Mortgage") in favor of America's Wholesale Lender for property located at 9 Hemsted Court, Dover, DE 19904 ("Property"). The Mortgage was recorded on June 22, 2001 in the Public Records of Kent County, Delaware at Book 1080, at page 307 as Instrument No. 10781. *See* Aff., Ex. 2 at ¶ 4; Compl. at ¶ 11. The underlying Note and Mortgage shall be referred to as the "Loan."

---

[2] Plaintiff's Complaint is cited herein as "Compl. __."

Plaintiffs' loan was immediately transferred to Countrywide Home Loans, Inc. *See* Compl. at ¶ 12.

On January 13, 2004, Plaintiffs executed a Loan Modification Agreement with Countrywide Home Loans, Inc., amending the Loan. The Loan Modification Agreement specifies an unpaid principal balance of $138,262.53. *See* Aff., Ex. 3 at ¶ 5.

Plaintiffs' loan was transferred to BAC Home Loan Servicing, LP. *See* Compl. at ¶ 12.

Starting September 2009 through March 2010, BAC Home Loans Servicing, LP sent Plaintiffs correspondence regarding their default under the terms of the Loan. *See* Aff., Ex. 4 at ¶ 6.

On May 20, 2010, Plaintiffs executed a Loan Modification Agreement with BAC Home Loans Servicing, LP amending the Loan. The Loan Modification Agreement specifies an unpaid principal balance of $168,487.79. *See* Aff., Ex. 5 at ¶ 7; Compl. at ¶ 14.

Plaintiffs' Exhibit C demonstrates that they made payments on their second mortgage in 2014, 2017, and 2019. *See* Compl., Ex. C.

In February 2019, Plaintiffs' second mortgage was set for a foreclosure sale. Plaintiffs paid off their second mortgage in March 2019. Plaintiffs' second mortgage was not consolidated with its first mortgage. *See* Compl. at ¶ 21, 23-24.

Effective December 1, 2019, Shellpoint began servicing Plaintiffs' loan. Shellpoint sent and Plaintiffs received its "Welcome Letter." *See* Aff., Ex. 6 at ¶ 8; Compl. ¶ 25.

At the time Shellpoint began servicing Plaintiffs' loan, Plaintiffs' loan was current. Plaintiffs continued to timely make all monthly payments until they paid off the loan in August 2021. *See* Aff., Ex. 7 at ¶ 9.

On December 11, 2019 Plaintiffs sent correspondence to Shellpoint via email, to which Shellpoint responded, on January 10, 2020. *See* D Aff., ¶ 10, Composite Ex. 8 thereto. Upon receipt of Plaintiffs' correspondence via email, Shellpoint marked Plaintiffs' account as "in dispute" with the credit reporting agencies. *See id.* at ¶ 11.

On August 12, 2020, Plaintiffs sent correspondence to Shellpoint via email and Shellpoint responded. *See* Aff. ¶ 12, Composite Ex. 9 thereto; Compl. ¶ 27-28.

Shellpoint did not receive any correspondence from Plaintiffs in November 2020. *See* Aff. at ¶ 13. Shellpoint did not receive any disputes from the credit reporting agencies regarding Plaintiffs' Loan. *See* Aff. at ¶ 14.

On July 19, 2021, Plaintiff Walter Davis called Shellpoint requesting that Shellpoint stop marking Plaintiffs' account as "in dispute" to the credit reporting agencies. Therefore, on July 22, 2021, Shellpoint submitted an AUD to all three credit reporting agencies removing the "in dispute" notation by placing a "XR" code

in the "CCC" column. The AUD was submitted to the credit reporting agencies. On that same date, Shellpoint sent correspondence to Plaintiffs confirming that the removal was submitted. *See* Aff. ¶ 15, Composite Ex. 10 thereto (including the account notation demonstrating Walter Davis' request, the AUD submitted to the bureaus, and the June 22, 2021 letter to Plaintiffs).

On or about August 24, 2021, Plaintiffs paid off the balance of the Loan in the amount of $125,588.52. *See* Aff. ¶ 16, Ex. 7 thereto.

## IV.  ARGUMENT

### A.  Shellpoint Did Not Violate RESPA (Count I).

i.  <u>Shellpoint Did Not Receive Any Correspondence in November 2020.</u>

Count I of Plaintiffs' Complaint alleges that Shellpoint violated Section 2605(e) or the Real Estate Settlement Procedures Act ("RESPA") as Plaintiffs sent a qualified written request ("QWR") or notice of error ("NOE") in November 2020, which has not been answered. Shellpoint has no record of correspondence from Plaintiffs in November 2020. *See* Aff.¶ 13. Plaintiffs' Complaint states that the alleged QWR is attached as Exhibit "M." However, no such exhibit is attached to Plaintiffs' Complaint. Shellpoint's duties under RESPA are only triggered if it receives a QWR. *See* 12 U.S.C. 2605(e)(1)(A). Therefore, Plaintiffs' RESPA claim fails as a matter of law.

ii.   Plaintiffs' December 11, 2019 and August 12, 2020 Emails Do Not Qualify as QWRs or NOEs.

To the extent Plaintiffs assert that their December 11, 2019 or August 12, 2020 email correspondence was a QWR or NOE, Plaintiffs' RESPA claim still fails as a matter of law.

First, pursuant to 12 U.S.C. § 2605(e), 12 CFR Part 1024 (Regulation X), Section 1024.35 outlines a servicer's requirements to respond to a notice identifying an error (or "notice of error") related to the servicing of a borrower's mortgage. It states that the borrower must include their name, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. *See* 12 CFR 1024.35(b). Similarly, Section 1024.36 outlines a servicer's requirements to respond to a request for information relating to the servicing of the mortgage loan (or a "qualified written request"). *See* 12 CFR 1024.36. It states that a borrower must include the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan. *Id.*

Section 1024.35 further provides that "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section." 12 CFR 1024.35(c). Section 1024.36 also provides that "[a] servicer may, by written notice

8

provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures of this section." 12 CFR 1024.36(b). Courts have explained that in order to qualify as a QWR and trigger the servicer's obligations under RESPA, the borrower's correspondence must be sent to the address identified by the servicer. *Roth v. CitiMortgage Inc.,* 756 F.3d 178, 181 (2d Cir. 2014) (quoting Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994)); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148–49 (10th Cir. 2013); *Roth v. CitiMortgage Inc.*, 2013 WL 5205775 (E.D.N.Y. Sept. 11, 2013); *Quenroe v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 425175 (D.Minn. Feb. 9, 2012); *Steele v. Green Tree Servicing, LLC*, 2010 WL 3565415 (N.D.Tex. Sept. 7, 2010) *aff'd sub nom. Steele v. Green Tree Servicing, L.L.C.,* 453 Fed. Appx. 473 (5th Cir. 2011); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 4262027 (W.D. Wash. Oct. 27, 2010); *Childress v. CitiMortgage, Inc*., 2010 WL 9951758 (D.N.M. Feb. 19, 2010); *Lemieux v. Litton Loan Servicing, LP*, 2009 WL 5206641 (E.D.Cal. Dec. 22, 2009); *Catalan v. RBC Mortg. Co*., 2008 WL 2741159 (N.D.Ill. July 8, 2008); *Bally v. Homeside Lending, Inc*., 2005 WL 2250856 (N.D. Ill. Sept. 8, 2005).

Here, Shellpoint provided Plaintiffs with its designated address in its Welcome Letter, sent on December 13, 2019. *See* Aff. ¶ 8, Ex. 6 thereto; Compl. ¶ 25. It directed Plaintiffs to send qualified written requests to NewRez, LLC, PO Box

10826, Greenville, SC 29603. *See* Aff., Ex. 6 thereto, pg. 4. This address is also provided in Shellpoint's January 10, 2020 letter and its response to Plaintiffs' August 2020 email. *See* Aff., Ex. 8 thereto, p. 3; Ex. 9, p. 2. Plaintiffs' emails clearly do not trigger Shellpoint's obligation to respond, as the emails were not sent to Shellpoint's designated QWR or NOE address. Even if Plaintiffs' Emails triggered Shellpoint's obligation to respond under RESPA (they did not), Shellpoint's responses were nonetheless sufficient as a matter of law because they complied with Section 2605(e)(2), which allows a loan servicer to respond to a qualified written request in any one of three ways: (A) transmitting a written notification to the borrower indicating that corrections to the borrower's account have been made; (B) sending a written explanation of the reasons for which the servicer believes the borrower's account is correct; or (C) sending a written explanation that includes information requested by the borrower or the reasons why the requested information is unavailable. 12 U.S.C. §2605(e)(2).

Here, Plaintiffs' email on December 11, 2019 requested a detailed accounting of their mortgage payments since 2001 because the original loan amount was less than the current loan balance. Plaintiffs' August 12, 2020 email requested a detailed accounting of their mortgage payments and charges since 2001. In response, Shellpoint provided the payment histories available after a reasonable investigation, as well as Plaintiffs' Loan Modification Agreement executed in 2010, which

demonstrated a higher principal account balance than their original Loan. Shellpoint sent both a written explanation of the reasons for which it believes the borrower's account is correct, and explaining why the additional requested information (a payment history from 2001) was not available. Therefore, Shellpoint clearly complied with all RESPA requirements.

iii.    <u>Plaintiffs' Fail to Assert Any Damages to State a Claim for RESPA.</u>

Finally, even if Plaintiffs sent their alleged QWRs or NOEs to the appropriate address and Shellpoint failed to respond (none of which Shellpoint concedes), Plaintiffs have failed to identify any damages for Shellpoint's alleged violation. Plaintiffs cannot manufacture a genuine issue of material fact regarding damages through self-serving and conclusory allegations.

In Plaintiffs' Complaint, Plaintiffs simply recite portions of Section 2605(e) and allege they are entitled to "actual damages, costs, attorneys' fees, and $2000 each." *See* Compl. ¶ 35. Plaintiffs fail to provide any detail as to what damages they suffered, the amount of damages they seek, or how Shellpoint caused Plaintiffs damages.

Plaintiffs also fail to detail how much, if any, of the $2,000 in statutory damages are attributable to Plaintiffs' RESPA claims. Statutory damages under RESPA are only allowed under Section 2605(f)(1)(B) if Plaintiff can sufficiently establish that Shellpoint engaged in a "pattern or practice" of noncompliance. 12

U.S.C. Section 2605(f)(1)(B). Here, Plaintiffs do not allege that Shellpoint engaged in a pattern of noncompliance with RESPA, nor have they conducted any discovery related to a claim for such statutory damages and fail to specifically request statutory damages, as a part of their RESPA claim. As such, Plaintiffs are unable to establish a claim for statutory damages and their RESPA claim fails as a matter of law. Therefore, summary judgment should be granted in Shellpoint's favor as to Count I.

**B.    Plaintiffs' Remaining Counts Fail Because Plaintiffs Paid Off the Loan.**

Plaintiffs' remaining Counts allege a violation by Shellpoint in continuing to service and collect on an account that is "in dispute" or that contains inaccurate account information. Plaintiffs' main assertion is that BANA advised them that their second and first liens were consolidated into one loan, pursuant to the 2010 Loan Modification Agreement. *See* Compl. ¶ 14. Plaintiffs' own Complaint, however, contains attachments demonstrating that they made payments on their second loan after they executed the 2010 Loan Modification Agreement. *See* Compl., Ex. C. Further, Plaintiffs have waived any argument that they dispute the amounts due and owing on the Loan because they paid off both the first and second loans in full and without dispute. Plaintiffs' Complaint states that they paid off their second mortgage on 2019. *See* Compl. ¶ 23. Further, Plaintiffs paid off their loan with Shellpoint on August 24, 2021. *See* Aff., ¶ 16, Ex. 7 thereto.

"'Where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.'" *Malawi v. PHI Service Co*., 2012 WL 986751 (Del. Ct. Comm. Pl. Feb. 22, 2012) (citing *Nieves v. All Star Title, Inc*., 2010 WL 2977966 at *6 (Del. Super. 2010) (citing *Home Ins. Co. v. Honaker*, 480 A.2d 652, 653 (Del. 1984)). In *Malawi*, the Delaware Court of Common Pleas held that because of Delaware's voluntary payment rule, cited above, plaintiff, who paid a utility bill owed by a third-party defendant, was precluded from reimbursement of that payment. *Id.* at *3. The court asserted that it would only find defendant entitled to reimbursement if the facts showed that he made the payments under duress. *Id.*

Likewise, in *Nieves v. All Star Title, Inc*., 2010 WL 2977966 (Del. Super. July 27, 2010), plaintiff filed suit seeking to recover damages for defendant's alleged unauthorized practice of law in its real estate service, claiming consumer fraud, deceptive trade practices, professional negligence and breach of contract. Because plaintiff's alleged "damages" consisted solely of fees it voluntarily paid to defendant with full knowledge that defendant was not providing an attorney's services, the court ruled that the voluntary payment rule served as a bar to plaintiff's claims. *Id.* at *1. Accordingly, the court granted defendant's motion to dismiss, concluding that to the extent plaintiff's suit sought recovery of fees paid to defendant, he is barred

from doing so by the voluntary payment rule. *Id.* at *6 (citing 53 A.L.R. 949; see also *Home Ins. Co. v. Honaker*, 480 A.2d 652, 653 (Del. 1983) ("As a general rule, money paid due to a mistake of law is not recoverable, while money paid under a mistake of fact may be recovered in equity under an unjust enrichment theory."); *W. Natural Gas. Co. v. Cities Serv. Gas Co.*, 201 A.2d 164, 169 (Del. 1964) ("[P]ayment voluntarily made with full knowledge of the facts cannot be recovered, in the absence of a contract to repay.").

Here, Plaintiffs voluntarily paid off both loans. As such, any claim that the amount was inaccurate is waived and summary judgment should be granted in Shellpoint's favor.

### C. Plaintiffs' Count II FDCPA Claim Fails Because Shellpoint is Not a Debt Collector Subject to the Fair Debt Collections Practices Act, and Plaintiffs' Claims Are Barred by the Statute of Limitations.

Plaintiffs allege that Shellpoint violated the FDCPA by failing to correct Plaintiffs' account history, charging increased interest on an inflated mortgage balance, plus obtaining additional monies on the principal mortgage balance. Plaintiffs attribute this conduct to the 2010 loan modification agreement. *See* Compl. ¶ 39.

To properly plead an FDCPA claim, Plaintiffs must allege facts to show: (i) they are consumers; (ii) Shellpoint is a debt collector; (iii) Shellpoint's conduct involved an attempt to collect a debt; and (iv) Shellpoint violated a provision of the

FDCPA in attempting to collect a debt. 15 U.S.C. § 1691; *Douglass v. Covergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014).

This Court's Memorandum Opinion [D.I. 16] already established that prior Defendant BANA was not a debt collector under the FDCPA. Similarly, Shellpoint is not a debt collector under the FDCPA because Plaintiffs were not in default when Shellpoint became the servicer and/or holder of the note. "[A]n assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of assignment." *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 403 (3d Cir. 2000). Thus, Count II fails to state a claim against Shellpoint.

Further, because Count II stems from the 2010 Modification of the Loan, which Plaintiffs executed in May 2010, Plaintiffs' FDCPA claim is barred by the applicable one-year statute of limitations. *See* 15 U.S.C. 1692k(d). Further, Plaintiffs' own Exhibit C demonstrates that Plaintiffs sent payments to BANA on the second mortgage in 2014, 2017, and 2019, well after the 2010 Loan Modification was executed. Plaintiffs clearly knew the second lien was not combined with their first lien by February 2018, at the latest, when they received the Notice of Intent to Foreclose. This Complaint was not filed until November 2021, long after the one-year statute of limitations expired. As such, the Court should grant summary judgment in Shellpoint's favor.

**D.      Plaintiffs' Count III FDCPA Claim Also Fails For Failure to State a Claim.**

As set forth above, Shellpoint is not a debt collector under the FDCPA, and is not subject to the requirements of the FDCPA in this case.  Even if it was, Plaintiffs have failed to demonstrate that they submitted a dispute to Shellpoint. As mentioned, the only correspondence received from Plaintiffs were two emails in December 2019 and August 2020, requesting the accounting history. Shellpoint was able to verify the legitimacy of the debt by pointing to the Loan Modification Agreement, increasing Plaintiffs' principal on the Loan to $168,487.79. *See* Aff., Ex. 5 thereto. Further, Plaintiffs fail to identify how Shellpoint sought to collect the debt. Plaintiffs voluntarily made their monthly payments to Shellpoint and voluntarily paid off the account balance of the Loan in 2021. *See* Aff., Ex. 7 thereto.

**E.      Plaintiffs' Count IV FDCPA is Preempted by the FCRA and Shellpoint Did Mark Plaintiffs' Account as "In Dispute" During the Relevant Time Period.**

Shellpoint is not a debt collector under the FDCPA. Even if it was, Plaintiffs cannot establish a claim by stating that Shellpoint is not reporting information to the credit bureaus. The FCRA preempts any other statute with regard to credit reporting. *See* 15 U.S.C § 1681t(b)(1)(F). Courts in this District have widely embraced a "total preemption" approach when interpreting the FCRA. *See, Burrell v. DFS Servs, LLC*, 753 F. Supp. 2d 438, 445 (D.N.J. 2010); *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112, at *18, 2012 WL 1340123 (D.N.J.

Apr. 16, 2012). Section 1681t(b)(1)(F) prohibits the imposition of state laws "with respect to any subject matter regulated under [15 USCS § 1681c], relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15. U.S.C. § 1681t(b)(1)(F). The "total preemption" approach is consistent with the Supreme Court's holding in *Cippollone v. Ligget Grp. Inc.*, 505 U.S. 504, 521 (1992), which found that "the statute's usage of 'no requirement or prohibition' is to be construed broadly, 'suggest[ing] no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules.'" *Edwards*, 2012 U.S. Dist. LEXIS 54112, at *19, 2012 WL 1340123.

Congress drafted this section of the FCRA "to eliminate state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Fallas v. Cavalry SPV I, LLC*, 2013 U.S. Dist. LEXIS 60380, at *26 (D.N.J. Apr. 29, 2013) (quoting *Campbell v. Chase Manhattan Bank, USA, N.A.*, 2005 U.S. Dist. LEXIS 16402 (D.N.J. June 24, 2005)). "Therefore, any state law claims predicated upon the false reporting of negative credit activity are dismissed as preempted by the FCRA." *Fallas*, 2013 U.S. Dist. LEXIS 60380, at *26.

Furthermore, upon receipt of Plaintiffs' December 2019 email, Shellpoint did mark Plaintiffs' account as "in dispute" with the credit bureaus and later removed

the "in dispute" notation in July 2020 after receiving a call from Plaintiffs requesting same. *See* Aff., ¶ 11, 15, Ex. 10 thereto. Summary judgment must be granted in Shellpoint's favor as to Count IV of Plaintiffs' Complaint.

### F. Plaintiffs' Count V was Dismissed.

Plaintiffs' Count V asserts claims for fraud and misrepresentation against BANA. Count V was dismissed via this Court's Order entered on September 28, 2022. (*See* D.I. 17).

### G. Plaintiffs Cannot State a Claim for Negligent Servicing (Count VI).

Plaintiffs fail to state a claim against Shellpoint for negligent servicing because Plaintiffs fail to identify a duty of care. To state a claim for negligence, Plaintiffs must allege that Shellpoint owed them a duty of care, that there was a breach of that duty, and that Plaintiffs suffered damages which were actually or proximately caused by the breach: "[T]he mere existence of a mortgage agreement between plaintiff and defendant is insufficient, as a matter of law to create any duty of care owing from Defendant to Plaintiff." *Bank of America, N.A. v. Westheimer*, 2014 WL 809207, at *4-5 (D.N.J. Feb. 18, 2014).

Further, Plaintiffs fail to specify how Shellpoint improperly serviced their account. Shellpoint properly applied all of Plaintiffs' payments when it serviced the loan. Further, Shellpoint's payment history demonstrates all payments were applied, including Plaintiffs' final payment, to pay off the Loan in 2021. *See* Aff., Ex. 7

thereto. Finally, as explained above, Shellpoint complied with RESPA. As such, summary judgment should be granted in Shellpoint's favor.

**H.    Shellpoint Is Not a Party to the Contract and Cannot be Subject to Liability for Breach of Implied Covenants of Good Faith and Fair Dealing (Count VII).**

As stated in this Court's Memorandum Opinion (D.I. 16), "[t]o state a claim for breach of the implied covenant of good faith and fair dealing, [a plaintiff] must allege (1) the specific implied contractual obligation; (2) a breach of the obligation by the defendant; and (3) resulting damage to the plaintiff." *O'Neill v. AFS Holdings, LLC,* 2014 WL 626031, at *4 (Del. Super. Ct. Jan. 15, 2014). Here, as already concluded by this Court, Plaintiffs' mortgages were subject to the terms of the first mortgage, the second mortgage, and the loan modification agreements. Plaintiffs fail to identify Shellpoint's breach.

Furthermore, Plaintiffs must establish a contractual relationship exists between Shellpoint and Plaintiffs to state a claim for breach of the implied covenant of good faith and fair dealing. *See Trunzo v. Citi Mortg.,* 876 F. Supp. 2d 521, 533 (W.D. Pa. 2012), *on re-argument in part*, 43 F. Supp. 3d 517 (W.D. Pa. 2014) (stating that "a 'servicer' only receives limited rights and obligations under the mortgage contract relating to servicing, . . . and, therefore, cannot be held liable for breaches in obligations that remain held by the 'lender' or 'note holder.' *See Ruff v. America's Servicing Co.*, No. 07–0489, 2008 WL 1830182, at *4 (W.D. Pa. Apr. 23,

2008) (holding that a servicer was not liable for breach of contract because it was not a party to the mortgage). Plaintiffs fail to identify a contractual relationship between Shellpoint and Plaintiff. Here, while Shellpoint is a servicer of the Loan, Shellpoint is not a party to any of the contracts involved (the first mortgage, second mortgage, or loan modification agreements).

## I.    Shellpoint Was Not Unjustly Enriched (Count VIII).

Plaintiffs allege that Shellpoint was unjustly enriched by charging Plaintiffs excess interest on an inflated mortgage balance. The evidence clearly establishes that Plaintiffs defaulted on their loan and subsequently modified their loan in 2010, with a principal balance of $168,487.79. *See* Aff., ¶ 7, Ex. 5 thereto; Compl. ¶ 14. Shellpoint became servicer on Plaintiffs' Loan in 2010 and not any other loan (as Plaintiffs' second loan was satisfied prior to Shellpoint's involvement in this Loan). *See* Compl. ¶ 23; Aff. ¶ 8, Ex. 6 thereto.

Further, Plaintiffs' conclusory allegations do not provide sufficient facts to show "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Total Care Physicians, P.A. v. O'Hara,* 798 A.2d 1043, 1056 (Del. Super. Ct. 2001) (citing *Jackson Nat. Life Ins. Co. v. Kennedy,* 741 A.2d 377, 393 (Del. Ch. 1999)). Plaintiffs fail to allege a single fact to demonstrate that Shellpoint received more than what it was entitled to receive. *See Hydrogen*

*Master Rights, Ltd. v. Weston,* 228 F. Supp. 3d 320, 337 (D. Del. 2017) (holding the Complaint's vague and conclusory allegations were insufficient to state a claim for unjust enrichment).

Finally, as this Court already found, Plaintiffs' unjust enrichment claims accrued either in May 2010 or February 2018. *See* (D.I. 16, pg. 13-14). The Complaint was filed on November 3, 2021, well beyond the three-year statute of limitations period. For these reasons, summary judgment should be granted in Shellpoint's favor as to Plaintiffs' unjust enrichment claim.

### J.    Plaintiffs Cannot State a Claim for RICO (Counts IX and X).

Plaintiffs' Counts IV and X allege that Shellpoint committed RICO violations and conspiracy to commit RICO under 18 U.S.C. § 1962(c) and § 1962(d) when it engaged in a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiffs, committed multiple related acts of collecting debts unlawfully through the use of fraud, either falsely claimed they had rights to the loan or pursued loan collection without filing the required documents in violation of state and federal law, and conspired to commit RICO violations.

This Court already found that Plaintiffs' RICO claims accrued either in May 2010 or February 2018. *See* D.I. 16, pg. 13-14. The Complaint was filed on November 3, 2021 which is well beyond the four-year statute of limitations period. *See Matthews v. Kidder, Peabody, & Co.,* 260 F.3d 239, 244-45 (3d Cir. 2001).

Further, this Court held that even if the claims were not time-barred, Counts IX and X fail to state claims upon which relief can be granted. *See* D.I. 16, pgs. 15-18. It found that Counts IX and X are pled in a conclusory manner and merely recite the elements of each claim without the requisite supporting facts. *Id.*

Finally, the facts clearly demonstrate that Plaintiffs executed a Loan Modification on the loan, paid off their second loan in 2019 prior to Shellpoint's involvement and subsequently paid off the loan.

## CONCLUSION

For the foregoing reasons, Defendant NewRez c/o Shellpoint Mortgage respectfully requests that this Court grant its motion for summary judgment, dismissing all remaining counts of Plaintiffs' Complaint.

WILKS LAW, LLC

*/s/ Scott B. Czerwonka*
Scott B. Czerwonka (Bar No. 4844)
Anna L. Fiscella (Bar No. 6796)
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Telephone: (302) 225-0850
Email: sczerwonka@wilks.law
Email: afiscella@wilks.law

*Attorneys for Defendant NewRez*
*c/o Shellpoint Mortgage*