IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER R. DAVIS, III and<br>DIANA M. COKE-DAVIS,<br><br>   Plaintiffs,<br><br>  v.<br><br>NEWREZ C/O SHELLPOINT<br>MORTGAGE,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 21-1713 (JLH)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Walter R. Davis III and Diana M. Coke-Davis, Dover, Delaware, Pro Se Plaintiffs.

Scott B. Czerwonka, Esq., and Anna Lucia Fiscella, Esq., Wilks Law LLC, Wilmington, Delaware. Counsel for Defendant.

March 12, 2024
Wilmington, Delaware

*/s/ James Hall*
HALL, U.S. District Judge:

## I. INTRODUCTION

On August 18, 2021, Plaintiffs Walter M. Davis III and Diana M. Coke-Davis, proceeding *pro se*, filed this action in the Delaware Court of Chancery, asserting claims related to two home mortgage loans. The case was subsequently transferred to the Delaware Superior Court. (D.I. 1-1 at 11–31, 8–10, 119–20.) Plaintiffs named as Defendants BAC Home Loans Servicing, L.P. ("BAC"), Greentree Servicing LLC ("Greentree"), Ditech Financial LLC ("Ditech"), and Newrez c/o Shellpoint Mortgage ("Shellpoint"). On December 3, 2021, Defendants removed the case to this Court. (D.I. 1.) On September 22, 2022, Plaintiffs voluntarily dismissed their claims against Greentree and Ditech. (D.I. 15.) On September 28, 2022, the Court granted BAC's motion to dismiss. (D.I. 16, 17.) The matter was recently reassigned to me, and I now resolve Shellpoint's motion for summary judgment (D.I. 23) as set forth below.

## II. BACKGROUND

On June 13, 2001, Plaintiffs obtained two mortgage loans—one loan in the amount of $130,400, secured by a 30-year promissory note, Loan No. 7817177 ("Loan No. 7177") (D.I. 25-1 at 2-24), and one loan in the amount of $32,600, secured by a 15-year promissory note, Loan No. 1767941 ("Loan No. 7941") (D.I. 10-3 at 2–13).

Eventually, BAC, an entity that did not originate either of the two loans, became the holder and servicer of both loans. From October 2009 through March 2010, BAC sent Plaintiffs several letters advising them that they were in default on Loan No. 7177. (D.I. 25-1 at 30–43.)

On May 20, 2010, Plaintiffs entered into a Loan Modification Agreement with BAC. (*Id.* at 41.) The May 20, 2010 Loan Modification Agreement referenced Loan No. 7177 only, did not

1

mention Loan No. 7941, and reported an unpaid principal balance of $168,487.79—significantly higher than the original June 13, 2001 loan of $130,400. (*Id.*) In their verified Complaint,[1] Plaintiffs alleged that they contacted BAC about the increase in the reported unpaid principal balance in the May 10, 2010 Loan Modification Agreement, and they were advised that Loan No. 7177 had been "consolidate[ed] with a subordinate mortgage debt also owned by BAC," which Plaintiffs understood to mean Loan No. 7941. (D.I. 1-1 at 16, 18.)

In 2013, Loan No. 7177 was transferred to Greentree for servicing and, in 2016, this loan was transferred to Ditech for servicing. In February 2018, Plaintiffs received from BAC a notice of intent to foreclose on Loan No. 7941, the loan which BAC's representative allegedly told Plaintiffs had been consolidated with Loan No. 7177 in the May 20, 2010 Loan Modification Agreement. (D.I. 1-1 at 97–98.) A foreclosure sale was scheduled for April 4, 2019. (*Id.* at 105.) Plaintiffs ultimately paid the balance owed on Loan No. 7941, and a mortgage satisfaction was executed on March 11, 2019. (*Id.* at 104.)

In December 2019, the servicing of Loan No. 7177 was transferred from Ditech to Defendant Shellpoint. In a "welcome letter" dated December 13, 2019, Shellpoint advised Plaintiffs that, effective December 1, 2019, Shellpoint was servicing the loan. (D.I. 25-1 at 46.) The welcome letter reported that the original loan amount was $130,400.00, the unpaid principal balance of the loan was $133,988.45, and Plaintiffs' payments were current. (D.I. 25 at 3; D.I. 25-1 at 48, 60.) The letter advised Plaintiffs that they had certain rights under the Real Estate

---

[1] The verification page is available on the state court docket but was not included with the documents Defendants filed in this Court upon removal. *See Davis v. BAC Home Loans Servicing, L.P.*, Case No. K21C-11-007 (Del. Super. Ct.), BL-2.

2

Settlement Procedures Act and to "[s]end all qualified written requests to NewRez LLC, P.O. Box 10826, Greenville, SC 29603-0826; or you can call 866-217-2347." (D.I. 25-1 at 49.)

On December 11, 2019, Plaintiff Walter Davis sent Shellpoint an email stating:

> I would like a detailed accounting of my mortgage payments made since 2001. The main reason for my request is because the original loan amount as per your statement is $130,400 and the current loan balance is greater. I would like to account for 18 years of payment history please?

(*Id.* at 67.)

In a January 10, 2020 letter response, Shellpoint advised Plaintiffs that the loan had an unpaid balance of $133,556.49, and the account was current. (*Id.* at 68.) The response further stated:

> [Shellpoint] acknowledges your request for your Loan History Summary on the referenced loan since 2001. Please be advised per your request enclosed is a copy of Loan History Summary. Our records show that you agreed to a loan modification agreement which has increased the principal balance of the referenced loan. Enclosed is a copy of the Loan Modification Agreement for your review.

(*Id.*) Included with the letter was a copy of the May 20, 2010 Loan Modification Agreement and a Loan History Summary, which only dated back to October 2015. (*Id.* at 70–84.) Plaintiffs were advised to call or email the Escalation Department with any further questions. (*Id.* at 68.)

After receiving Plaintiffs' December 11, 2019 email, Shellpoint advised the credit reporting agencies that Plaintiffs' account was "in dispute." (D.I. 25 at 3.)

On August 12, 2020, Plaintiff Walter Davis emailed Shellpoint, stating:

> Customer Service informed me that I need to write to you. I would like a copy of my mortgage payments and charges since its inception in 2001. Customer Service furnished me with a payment history from 2015 to current. Can you help please?

(D.I. 25-1 at 86.)

In an undated email response, Shellpoint's Loan Servicing Department responded:

3

> [Shellpoint] began servicing your loan on or about December 1, 2019. Therefore, we are not able to provide a copy of a detail accounting of your mortgage payments and charges since its inception in 2001.
>
> Please be advised, as the servicer of your loan, [Shellpoint] is not required to respond to inquiries related to the origination, underwriting, subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan.

(*Id.* at 85.)

In their Complaint, Plaintiffs alleged that they sent Shellpoint a so-called "Qualified Written Request" in November 2020. (D.I. 1-1 at 20.) However, they have not provided the Court with a copy of that request, nor have they provided any allegations or evidence about its contents. In an affidavit, an authorized representative of Shellpoint swore that no such correspondence was received in November 2020. (D.I. 25 at 3.)

On July 19, 2021, Plaintiff Walter Davis called Shellpoint and requested that Plaintiffs' account be removed from "in dispute" status with the credit reporting agencies. (*Id.* at 3, D.I. 25-1 at 92.) On July 22, 2021, Shellpoint's Compliance Department sent Plaintiffs a letter advising them that in response to their July 19, 2021 request, Shellpoint sent a manual update to the credit reporting agencies to have the "in dispute" comment removed, and to update Plaintiffs' payment history to reflect that it was current. (*Id.* at 93, 94.) On August 24, 2021, Plaintiffs paid off the balance of Loan No. 7177. (*Id.* at 4, 57–68.)

Plaintiffs' August 2021 Complaint alleges that Shellpoint (1) violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA") (Count I); (2) violated the Fair Debt Collections Practices Act, 15 U.S.C § 1692 ("FDCPA") (Counts II–IV): (3) negligently serviced Plaintiffs' account (Count VI); (4) breached the implied covenant of good faith and fair dealing

4

(Count VII); (5) was unjustly enriched (Count VIII); and (6) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts IX and X).[2]

Shellpoint now moves for summary judgment. The matter is fully briefed.

## III. **LEGAL STANDARDS**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted).

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[2] Count V was brought only against BAC. As noted, before the matter was assigned to me, BAC filed a motion to dismiss, which the Court granted in a Memorandum Opinion and Order. (D.I. 16, 17.) Notably, the Court concluded that Plaintiff's claims arising from their allegations that BAC advised them in 2010 that Loan Nos. 7177 and 7941 had been consolidated, only to later in 2018 seek foreclosure on Loan No. 7941, were barred by the applicable statute of limitations.

affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted).

## IV. DISCUSSION

### A. RESPA Claim (Count I)

RESPA is a federal statute that governs mortgage loans insured by the federal government. 12 U.S.C. §§ 2601–17. It "is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans, and imposes duties on lenders and loan servicers." *Gunn v. First Am. Fin. Corp.*, No. 13-174, 2014 WL 2445750, at *3 (D. Del. May 30, 2014). Regulation X is RESPA's implementing regulation. 12 C.F.R. §§ 1024.1-1024.41.

RESPA provides that borrowers may obtain information from mortgage servicers, or contest errors, by way of a Qualified Written Request ("QWR"). *Id.* § 1024.36(a). "A servicer may, by written notice provided to a borrower, establish an address that a borrower must use" to

6

send the QWR, and the written notice must "include a statement that the borrower must use the established address." *Id.* § 1024.36(b). Upon receiving a QWR, a mortgage servicer is required to "provide the borrower with a written explanation" that includes, as relevant, "a statement of reasons for which the servicer believes that the account of the borrower is correct as determined by the servicer," and "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(B)(i), (C)(i). RESPA permits two types of damages for violations of 12 U.S.C. § 2605(e): (1) actual damages suffered by a borrower "as a result of" the violation; and (2) statutory damages if the borrower can demonstrate "a pattern or practice of noncompliance." *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 127–28 (3d Cir. 2018); *see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining that recovery of actual damages requires "a 'causal link' between the alleged [RESPA] violation and the damages").

Shellpoint argues that Plaintiffs' RESPA claim fails because (1) there is no evidence that Plaintiffs sent a QWR in November 2020, (2) Plaintiffs' December 2019 and August 2020 emails do not qualify as QWRs, (3) Shellpoint's responses to the December 2019 and August 2020 emails were sufficient under RESPA, and (4) there is no evidence that Plaintiffs suffered any damages resulting from Shellpoint's alleged failure to sufficiently respond.

To begin, the Court concludes that summary judgment is appropriate with regard to Plaintiffs' claim that Shellpoint failed to adequately respond to their November 2020 QWR, as there is an absence of evidence in the record to support Plaintiffs' allegation that they sent correspondence in November 2020 that qualified as a QWR. *See* 12 U.S.C.A. § 2605(e) (QWR requirements); 12 C.F.R. § 1024.36.

7

Turning to Plaintiffs' December 2019 and August 2020 emails requesting information from Shellpoint, even if the Court assumes both that the emails qualify as QWRs under RESPA[3] and that Shellpoint's responses were deficient, summary judgment in favor of Shellpoint is appropriate because Plaintiffs have failed to point to any evidence that they suffered any damages caused by Shellpoint's deficient responses. In opposing summary judgment, Plaintiffs argue that "[d]amages were ongoing since the inception of the complaint filing," but Plaintiffs have not explained—or offered evidence supporting—what those damages are or how they were caused by Shellpoint's alleged deficient responses to Plaintiffs' requests for information.[4] Nor have Plaintiffs offered evidence to suggest that Shellpoint engaged in "a pattern or practice of noncompliance" so as to recover statutory damages.

For these reasons, Shellpoint's motion for summary judgment will be granted as to Plaintiffs' RESPA claim.

### B.   FDCPA Claims (Counts II–IV)

"The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). "To prevail on an FDCPA claim, a plaintiff must prove

---

[3] Shellpoint contends that the emails do not qualify as QWRs because they were not sent to the address Shellpoint designated in its welcome letter to Plaintiffs. District courts in the Third Circuit have reached varying conclusions as to whether a servicer might nevertheless be obligated to respond under such circumstances. *Compare, e.g., Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *38 (D.N.J. June 27, 2019) (holding that a borrower's failure to send a written request to the designated QWR address "d[id] not trigger [the servicer's] RESPA duties"), *with Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 364 (E.D. Pa. 2013) (holding that RESPA did not require a borrower to send its QWR to the servicer's specified address).

[4] For example, Plaintiffs have failed to point to record evidence sufficient to demonstrate that they made any overpayment to Shellpoint. Plaintiffs had the ability to seek discovery from Shellpoint and third parties, and discovery is now closed. (D.I. 18.)

8

that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Even if the Court assumes that Shellpoint is a debt collector within the meaning of the statute (which Shellpoint disputes), Plaintiffs have not explained—or offered evidence supporting—their assertions in Counts II and IV that Shellpoint violated the provisions of the FDCPA that prohibit "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" or "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. §§ 1692f(1), 1692e(8). In particular, Plaintiffs have submitted no evidence to suggest that the debt collected by Shellpoint was not valid. Moreover, there is no genuine issue of material fact that Plaintiffs' account was marked "in dispute," following Plaintiff Walter Davis's December 11, 2019 email, and that, upon Plaintiffs' request in July 2021, Shellpoint's Compliance Department sent a manual update to the credit reporting agencies to have the "in dispute" comment removed and to update Plaintiffs' payment history to reflect that it was current.[5] Nor have Plaintiffs supported their assertion that

---

[5] To the extent that Count IV, nominally brought under the FDCPA, can be construed as an FCRA claim under 15 U.S.C. § 1681s-2, it likewise fails. Plaintiffs have not pointed to any evidence suggesting that they disputed the credit reporting with the credit reporting agencies. *See Church-El v. Bank of N.Y.*, No. 11-877, 2015 U.S. Dist. LEXIS 167220, *8 (D. Del. Dec. 15, 2015) (dismissing FCRA claim because the plaintiff failed to allege facts that he notified a credit reporting agency of a dispute).

Shellpoint violated 15 U.S.C. §§ 1692g(b), as alleged in Count III, as there is no evidence that Plaintiffs submitted a dispute to Shellpoint as required by the statute.

Accordingly, Shellpoint's motion for summary judgment will be granted as to Plaintiffs' FDCPA claims.

### C. Negligent Servicing Claim (Count VI)

Count VI alleges "negligent servicing." Although not entirely clear, this count appears to be a common law negligence claim. "As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Pinkert v. John J. Olivieri, P.A.*, No. 99–380, 2001 WL 641737, at *5 (D. Del. May 24, 2001). Here, even if Shellpoint is not a party to the loan agreement, any duty it has to Plaintiffs arises out of that agreement. *See, e.g., Gernhart v. Specialized Loan Servicing LLC*, No. 18-2296, 2019 WL 1255053, at *4-5 (E.D. Pa. Mar. 18, 2019) (dismissing negligence claim against mortgage servicer because its only duty to plaintiff arose out of contract); *In re Hartman*, No. 15-7093, 2017 WL 2230336, at *4 (D.N.J. May 22, 2017), *aff'd*, 763 F. App'x 160 (3d Cir. 2019); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (affirming dismissal of negligence claims because the plaintiffs could identify no duty that had its roots outside of the note and mortgage contracts); *Audubon Eng'g Co., LLC v. Int'l Procurement & Contracting Grp., LLC*, No. 13-1248, 2015 WL 4084053, at *4 (D. Del. July 6, 2015), *aff'd*, 647 F. App'x 95 (3d Cir. 2016). The Court is unaware of any Delaware authority imposing an independent legal duty on a mortgage servicer to a borrower, and Plaintiffs have failed to identify one.

Accordingly, summary judgment will be entered in favor of Shellpoint on Plaintiffs' negligent servicing claim.

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count VII)

Count VII alleges breach of the implied covenant of good faith and fair dealing. Plaintiffs have not provided any evidence demonstrating that they were in a contractual relationship with Shellpoint. Accordingly, the Court will grant summary judgment to Shellpoint on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### E. Unjust Enrichment Claim (Count VIII)

Count VIII alleges unjust enrichment. "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

I agree with Shellpoint that it is entitled to summary judgment on this claim. Among other problems, Plaintiffs have failed to point to record evidence sufficient to demonstrate that they made any overpayment to Shellpoint.

### F. RICO Claims (Counts IX and X)

Counts IX and X allege that Shellpoint and the other Defendants committed RICO violations and conspiracy to commit RICO under 18 U.S.C. §§ 1962(c) and 1962(d).

Plaintiffs have put forth no evidence establishing any aspects of their RICO claims and, accordingly, Shellpoint is entitled to summary judgment on these claims.

## V.     CONCLUSION

For the above reasons, the Court will grant Shellpoint's motion for summary judgment.

An appropriate Order will be entered.